## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

| | | |
|---|---|---|
| **CHARLES MICHAEL WENTZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 2:22-00528** |
| | ) | |
| **SUPERINTENDENT DONALD AMES, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Defendants' Motion to Dismiss (Document No. 13), filed on March 6, 2023. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document No. 15.) On March 29, 2023, Plaintiff filed a Response in Opposition to Defendants' Motion. (Document No. 22.) Defendants filed their Reply on April 5, 2023. (Document No. 24.) On April 17, 2023, Plaintiff filed a Surreply. (Document No. 26.) Having examined the record and considered the applicable law, the undersigned has concluded that Defendants' Motion should be denied.

### PROCEDURAL BACKGROUND

On November 17, 2022, Plaintiff, acting *pro se*,[1] filed his Motion to Proceed Without Prepayment of Fees and Complaint claiming entitlement to relief pursuant to Title 42 U.S.C. §

---

[1]  Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

1983. (Document Nos. 1 and 2.) In his Complaint, Plaintiff names the following as Defendants: (1) Donald Ames, Superintendent at Mount Olive Correctional Complex ("MOCC"); (2) Jonathan Frame, Associate Superintendent at MOCC; (3) Major Josh Ward, MOCC; (4) Jane Doe; (5) John Doe; and (6) Unknown Defendants. (Document No. 2.) Plaintiff alleges that the above Defendants violated his Eighth Amendment rights by subjecting him to unconstitutional conditions of confinement. (Id., pp. 4 – 5.) Specifically, Plaintiff states that Defendants knowingly placed him in danger resulting in him being severely injured. (Id.) Plaintiff explains that Defendants knowingly put him in danger by "not following laws, policies, and procedures by not having guards posted at all times on the yard." (Id.) As a result, Plaintiff alleges that he was "assaulted and nearly killed" on November 11, 2020. (Id.) Plaintiff alleges that due to Defendants' failure to protect him, "two inmates stomped up and down on [his] head and face." (Id.) Plaintiff states that he had to be "life flighted" to CAMC Hospital where he underwent a 15 hour surgery for severe facial fractures. (Id.) Plaintiff further explains that he had to be placed on a ventilator for several days. (Id.) Plaintiff states that he is still undergoing surgeries regarding his injuries. (Id.) Plaintiff explains that he has an upcoming surgery for the reconstruction of his eye lid. (Id.) As relief, Plaintiff's request monetary damages. (Id.) As Exhibits, Plaintiff attaches the following: (1) A copy of his pertinent medical records (Document No. 2-1, pp. 1 - 23); and (2) A copy of his grievances (Id., pp. 24 – 28.)

By Order entered on February 21, 2023, the undersigned granted Plaintiff's Motion to Proceed Without Prepayment of Fees and directed the Clerk to issue process. (Document No. 8.) On March 6, 2023, Defendants filed their Motion to Dismiss and Memorandum in Support. (Document Nos. 13 and 14.) Defendants argue that Plaintiff's claims should be dismissed based on the following: (1) Plaintiff failed to assert his cause of action within the applicable statute of

limitations (Id., pp. 3 – 4.); (2) "Plaintiff's allegations against these Defendants are threadbare recitals of the elements of a cause of action supported by conclusory allegations that are not entitled to the presumption of truth" (Id., pp. 4 – 5.); and (3) Plaintiff failed to exhaust his administrative remedies prior to the filing this action (Id., pp. 5 – 7.).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on March 7, 2023, advising him of the right to file a response to the Defendants' Motion to Dismiss. (Document No. 15.) On March 29, 2023, Plaintiff filed his Response in Opposition. (Document No. 22.) As Exhibits, Plaintiff attaches the following: (1) A copy of an Incident Report prepared by Officer Alan Moore dated November 11, 2020 (Document No. 22-1, pp. 1 – 2.); (2) A copy of an Incident Report prepared by Officer Matthew Isaacs dated November 11, 2020 (Id., pp. 3 – 4.); (3) A copy of an Incident Report prepared by Officer Amber Harless dated November 11, 2020 (Id., pp. 5 – 6.); and (4) The Affidavit of Inmate Roy E. Hillberry II (Document No. 23.). On April 5, 2023, Defendants filed their Reply. (Document No. 24.) On April 17, 2023, Plaintiff filed his Surreply.[2] (Document No. 26.)

## THE STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550

---

[2] Local Rule of Civil Procedure 7.1(a)(7) provides that "[s]urreply memoranda shall not be filed except by leave of court." See also Johnson v. Ford Motor Co., 2005 WL 2353469 (S.D.W.Va. Sept. 26, 2005)(stating that the "motion to strike is granted because plaintiff's surreply is not permitted by either the Federal or Local Rules of Civil Procedure.") Although Plaintiff failed to properly request leave of the Court to file his surreply, the Court is disinclined to strike Plaintiff's surreply from consideration in view of the less stringent standard applicable in this case by virtue of Plaintiff's pro se status. Defendants did assert new arguments in their Reply. The Court will therefore consider Plaintiff's Surreply as properly filed.

U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief." Id. at 556 U.S. at 679, 129 S.Ct. at 1950. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

This Court is required to liberally construe *pro se* documents, holding them to a less stringent standard than those drafted by attorneys. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (1978). Liberal construction, however, "does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Miller v. Jack, 2007 WL 2050409, at * 3 (N.D.W.Va. 2007)(citing Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.1978)). Further, liberal construction does not require the "courts to conjure up questions never squarely presented to them." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). In other words, a court may not construct legal argument for a plaintiff. Small v. Endicott, 998 F.2d 411 (7th Cir.1993). Finally, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir.1990)). Where a *pro se* Complaint

4

can be remedied by an amendment, however, the District Court may not dismiss the Complaint

with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct.

1728, 1734, 118 L.Ed.2d 340 (1992); also see Goode v. Central Virginia Legal Aid Society, Inc.,

807 F.3d 619, 630 (4th Cir. 2015), abrogated in part on other grounds by, Bing v. Brivo System,

LLC, 959 F.3d 605, 914-15 (2020).

## ANALYSIS

"[F]ederal courts must take cognizance of the valid constitutional claims of prison

inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). Title 42

U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by

the Constitution and laws [of the United States]." Thus, Section 1983 provides a "broad remedy

for violations of federally protected civil rights." Monell v. Dep't of Social Services, 436 U.S. 658,

685, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Generally speaking, to state and prevail upon a claim

under 42 U.S.C. § 1983, a Plaintiff must prove that (1) a person acting under color of State law (2)

committed an act which deprived him of an alleged right, privilege or immunity protected by the

Constitution or laws of the United States.

A.    **Failure to Exhaust**:

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates

exhaust available administrative remedies prior to filing civil actions though the administrative

process may not afford them the relief they might obtain through civil proceedings.[3] Woodford v.

---

[3] 42 U.S.C. § 1997e(a) provides as follows:
> No action shall be brought with respect to prison conditions under section 1983
> of this title or any other federal law, by a prisoner confined in any jail, prison,
> or other correction facility until such administrative remedies as are available
> are exhausted.

5

Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), aff'd, 54 Fed.Appx. 159 (4th Cir. 2003), cert. denied, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[A] court may not excuse a failure to exhaust" because the PLRA's mandatory exhaustion scheme "foreclose[es] judicial discretion." Ross v. Blake, 578 U.S. 632, 136 S.Ct. 1850, 1856-57, 195 L.Ed.2d 117 (2016)("[A] court may not excuse a failure to exhaust, even to take [special circumstances] into account."). But the plain language of the statute requires that only "available" administrative remedies be exhausted. Id. at 1855("A prisoner need not exhaust remedies if they are not 'available.'") In Ross v. Blake, the Supreme Court set forth three scenarios where the administrative process is considered "unavailable": (1) The administrative process "operates as a simple dead end -- with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) The administrative process is so opaque that no ordinary prisoner can discern or navigate through the process; and (3) The "administrator thwart inmates from taking advantage of a grievance process through machination, misrepresentation or intimidation." Ross, 136 S.Ct. at 1859-60; also see Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d

523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

Similar to the PLRA, the West Virginia Prisoner Litigation Reform Act ("WVPLRA") requires an inmate to exhaust the agency's procedures before filing a civil action regarding an ordinary administrative remedy. W.Va. Code § 25-1A-2(c). An "ordinary administrative remedy" is defined as "a formal administrative process by which an inmate submits a grievance seeking redress and presenting concerns regarding any general or particular aspect of prison life which does not involve violence . . . An ordinary administrative remedy includes, but is not limited to, . . . staff treatment or some other alleged wrong." W. Va. Code § 25-1A-2(a). Exhaustion of an ordinary administrative remedy is satisfied upon a showing of the following:

> An ordinary administrative remedy is considered exhausted when the inmate's grievance complies with duly promulgated rules and regulations regarding inmate grievance procedures, has been accepted, fully appealed and has received a final decision from the Commissioner of Corrections or the Commissioner's designee, or the Executive Director the Regional Jail Authority, or the Director's designee.

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983 or Bivens action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint

is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005), *abrogated on other grounds by* Custis v. Davis, 851 F.3d 358 (4th Cir. 2017). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. Jones v. Bock, supra, 549 U.S. at 216, 127 S.Ct. at 921(Failure to exhaust is an affirmative defense that a defendant must generally plead and prove); also see Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether

8

an inmate has exhausted administrative remedies. "A court may sua sponte dismiss a complaint when the alleged facts in the complaint, taken as true, prove that the inmate failed to exhaust his administrative remedies." Custis v. Davis, 851 F.3d. 358, 361 (4th Cir. 2017); also see Banks v. Marquez, 694 Fed. Appx. 159 (4th Cir. 2017)(finding no error in the district court's decision to sua sponte dismiss petitioner's petition where petitioner explicitly admitted in his petition that he failed to exhaust his administrative remedies). Although failure to exhaust available administrative remedies is an affirmative defense, it is a threshold issue that must be resolved before reaching the merits of the underlying claims for relief. Jones v. Bock, supra, 549 U.S. at 216, 127 S.Ct. at 921; Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). Once the defendant has made a threshold showing of failure to exhaust, the burden of showing that the administrative remedies were unavailable falls to plaintiff. See Washington v. Rounds, 223 F.Supp.3d 452, 459 (D.Md. 2016)(citing Graham v. Gentry, 413 Fed.Appx. 660, 663 (4th Cir. 2011)). Whether an administrative remedy has been exhausted for purposes of the PLRA "is a question of law to be determined by the judge." Creel v. Hudson, 2017 WL 4004579, at * 3 (S.D.W.Va. 2017)(citing Drippe v. Tobelinski, 604 F.3d 778, 782 (3rd Cir. 2010)); Lee v. Willey, 789 F.3d 673, 678 (6th Cir. 2015)(finding disputed questions of fact are resolved by the Court); also see Woodhouse v. Duncan, 741 Fed.Appx. 177, 178 (4th Cir. 2018)(citation omitted)("Judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury.") If a plaintiff fails to exhaust his or her administrative remedies under the PLRA or WVPLRA, then the defendant is entitled to judgment as a matter of law. See Legg v. Adkins, 2017 WL 72604, * 2 (S.D.W.Va. Feb. 23, 2017).

    West Virginia Division of Corrections Policy Directive 335.00 (codified in the W. Va. Code of State Rules), which was in effect at the time of the incident described in Plaintiff's

Complaint, sets forth the administrative remedy process. An inmate initiates the administrative process by filing a grievance.[4] Specifically, an inmate must first file a grievance utilizing a grievance form "within fifteen (15) days of any occurrence that would cause him/her to file a grievance." W. Va. Code R. § 90-9-4.1. Only one issue or complaint may be grieved per form, and the inmate must submit it to his/her Unit Manager. Id. § 90-9-4.2 – 4.3. The Unit Manager is required to ensure that an answer to the grievance is provided to the inmate within five days. Id. § 90-9-4.5. Next, the inmate may appeal the Unit Manager's response "to the Warden/Administrator within five (5) days from delivery of the response to his/her grievance" using the same form submitted to the Unit Manager. Id. § 90-9-5.1. "The Warden/Administrator shall respond to the appeal . . . within five (5) days." Id. § 90-9-5.4. Finally, the inmate may appeal the Warden's response "to the Commissioner of the Division of Corrections within five (5) days after he/she receives the Warden/Administrator's response . . . using the same form . . ." Id. § 90-9-6.1. "*Only one grievance per envelope shall be permitted*" and "submission of multiple grievance . . . shall be grounds for rejection for the entire mailing . . .." Id.(emphasis in original). "If a grievance has not been properly submitted through any level by an inmate, it shall be rejected. A rejected grievance does not exhaust the grievance process or that step of the process." Id. § 90-9-6.4.

In their Motion to Dismiss, Defendants argue that Plaintiff's claims should be dismissed because Plaintiff failed to properly exhaust his administrative remedies. (Document Nos. 13 and 14.) Specifically, Defendants argue that "Plaintiff failed to exhaust his administrative remedies by failing to timely file a grievance." (Document No. 14, p. 7.) Defendants contend that "[a]s is clear from Grievance No. 21-NCCC-C3-70017 that the Plaintiff failed to file the same within the time

---

[4] A "grievance" is defined to "mean the formal process by which an inmate seeks redress over any matter concerning prison life, whether it involves general circumstances or particular episodes." W. Va. Code St. R. § 90-9-4.1.

permitted." (<u>Id.</u>) Defendants, therefore, conclude it is proper to dismiss the Complaint. (<u>Id.</u>) In Response, Plaintiff states that he "did exhaust [his] administrative remedies." (Document No. 22, p. 2.) Plaintiff acknowledges his administrative remedies were denied as untimely. (<u>Id.</u>, pp. 2 – 3.) Plaintiff, however, argues that he exhausted his administrative remedies once the remedies were available to him. (<u>Id.</u>) Plaintiff explains that the administrative process was unavailable to him due to his medical condition. (<u>Id.</u>) Plaintiff states that the "medical record [and] prison record will all show 'massive injuries,' [he] went from a ventilator to a prison hospital, in and out of surgeries, some real trauma, transferred to here (Northern Correctional Facility) for life safety." (<u>Id.</u>) Defendants failed to address the foregoing in their Reply. (Document No. 26.)

Based upon a review of the record, the undersigned finds that Defendants have not met their burden proving that Plaintiff failed to exhaust his *available* administrative remedies. It is undisputed that Plaintiff's administrative remedies were rejected as untimely. Not only must a prisoner exhaust his administrative remedies, but he must also do so properly." <u>Wells v. Parkersburg Work Release Ctr. et al.</u>, 2016 WL 696680, at *3 (S.D. W. Va. Jan. 19, 2016). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." <u>Id.</u>(citing <u>Woodford v. Ngo</u>, 548 U.S. 81, 90–91, 126 S.Ct. 2378, 165 L.Ed.2d. 368 (2006)). Since Plaintiff's administrative remedies were rejected as untimely, such could not properly exhaust his administrative remedies. <u>See</u> <u>Pendleton v. Ames</u>, 2023 WL 2541967, * 5 (S.D.W.Va. March 16, 2023)(finding that plaintiff's grievance that was rejected as untimely, could not have properly exhausted his administrative remedies). Viewing the evidence in a light most favorable to Plaintiff, however, the undersigned cannot find that Plaintiff failed to exhaust his *available* administrative remedies. In Plaintiff's verified Complaint, Plaintiff declares

that his filing of administrative remedies was delayed due to his "long hospital stay" and "ongoing surger[ies]." (Document No. 2, p. 3.) Plaintiff's attached medical records support Plaintiff's claim that he suffered severe injuries that required his "airflight" to the hospital due to "head trauma, possible aspiration, [and] uncontrolled bleeding." (Document No. 2-1.) The medical records further support that Plaintiff suffered from severe injuries to his face, including his right eye, and he underwent several surgeries. (Id.) The undersigned notes that this matter is before the Court on a Motion to Dismiss. It is not apparent from the face of Plaintiff's Complaint that Plaintiff failed to fully exhaust his available administrative remedies prior to filing the above action. There are issues of fact that require further development. As explained above, failure to exhaust administrative remedies is an affirmative defense. Therefore, Defendants have the burden of proving that Plaintiff had available remedies which he did not exhaust. In the instant case, Defendants have not provided any evidence indicating that Plaintiff had *available* remedies which he did not exhaust. See Ferguson v. Clarke, 2016 WL 398852, * 6 (W.D.Va. Jan. 6, 2016)(inmate's allegation that the administrative process was unavailable was belied by evidence that inmate submitted other grievances within the same period); Al Mujahidin v. Harouff, 2013 WL 4500446, * 7 (D.S.C. Aug. 21, 2013)(finding that inmate could not avoid summary judgment by simply asserting an unsupported allegation that his grievances were not processed or destroyed, in light of documentary evidence showing that other grievances were processed); McMillian v. N.C. Central Prison, 2013 WL 1146670, * 5 (E.D.N.C. March 19, 2013)(An inmate's allegations that grievances were not accepted by staff, "without providing any details regarding the date the alleged grievances were submitted or to whom they were submitted, are insufficient to refute defendants' arguments in support of their exhaustion defense."), aff'd, 534 Fed.Appx. 221 (4th Cir. 2013). Accordingly, the undersigned respectfully recommends that Defendants' Motion to Dismiss be

denied based upon Plaintiff's failure to exhaust.

**B.    Statute of Limitations:**

In his Complaint, Plaintiff alleges that the above Defendants violated his Eighth Amendment rights by knowingly placing him in danger resulting in him being severely injured. (Document No. 2, pp. 4 – 5.) Specifically, Plaintiff alleges that he was "assaulted and nearly killed" on November 11, 2020, when "two inmates stomped up and down on [his] head and face." (Id.)

In their Motion to Dismiss, Defendants argue that Plaintiff's claims are untimely. (Document Nos. 13 and 14.) Defendants contend that Plaintiff's claims are subject to a two-year statute of limitations. (Document No. 14, pp. 3 – 4.) Defendants then proceed to argue that "the statute of limitations to assert a claim for the incident of November 10, 2020, ran on, or before, November 10, 2022." (Id., p. 4.) Defendants conclude that the "Complaint in the instant matter was not filed until November 17, 2022, beyond the time permitted by the applicable statute of limitations." (Id.)

In Response, Plaintiff first argues he is "a layperson with no knowledge of law." (Document No. 23, p. 2.) Second, Plaintiff states that "another inmate told Wentz to be safe on the 2 year limitation and use the mailbox rule on that day of Nov. 10, 2022." (Id.) Plaintiff states that on November 10, 2022, he "had a prison official notarize a statement with the Complaint and placed it in the prison mailbox on camera." (Id.) Plaintiff argues that "under the prison mailbox rule, a filing is deemed to have been filed on the date it was delivered to prison officials to be sent to the Clerk of the Court." (Id.) Third, Plaintiff states that he thought he had an additional 21 days due to the grievance process. (Id.) Plaintiff appears to argue that the time spent in the grievance process should not "go against my 2 year time frame." (Id.) Finally, Plaintiff states that "COVID-19 was a constant problem for both in prison and out." (Id.) As Exhibits, Plaintiff attaches the

following: (1) A copy of an Incident Report prepared by Officer Alan Moore dated November 11, 2020 (Document No. 22-1, pp. 1 – 2.); (2) A copy of an Incident Report prepared by Officer Matthew Isaacs dated November 11, 2020 (Id., pp. 3 – 4.); (3) A copy of an Incident Report prepared by Officer Amber Harless (Id., pp. 5 – 6.); and (4) The Affidavit of Inmate Roy E. Hillberry II (Document No. 23.).

In Reply, Defendants argue that the prison mailbox rule does not apply to the filing of a Complaint. (Document No. 24.) Defendants contend that the prison mailbox rule only applies "to petitions for appeal under Rule 4(c) of the Federal Rules of Appellant Procedure." (Id., p. 2.) Defendants argue that "[t]his rule specifically addresses appeals by inmate confined in an institution. The mailbox rule does not extend to the filing of a Complaint." (Id.) Citing Rogers on behalf of Jones v. Bowen, 790 F.2d 550 (11th Cir. 1986), Defendants assert that "a Complaint is filed for the statute of limitations purposes when it is in actual or constructive possession of a Court Clerk." (Id.) Defendants state that "it is clear from the Court's docket that this Complaint was filed, that is received by the Circuit Clerk's office, on November 17, 2022 for a cause of action which arose on November 10, 2020." (Id.) Therefore, Defendants argue that Plaintiff cannot rely upon the prison mailbox rule and his Complaint should be dismissed as untimely. (Id.)

In his Surreply, Plaintiff first continues to argue that the prison mailbox rule applies to the filing of his Complaint. (Document No. 26.) Plaintiff states that "I did the only thing I could have done at the time. [I]f I could have drove down to the courthouse, then I would have been there." (Id.) Plaintiff concludes that he filed his Complaint by putting it in the prison mailbox on November 10, 2022. (Id.) Second, Plaintiff again argues that the statute of limitations was tolled by the grievance process. (Id.) Finally, Plaintiff contends that the statute of limitations should be tolled for the days he could not see, was on a ventilator, and was undergoing surgeries. (Id.)

14

Concerning Plaintiff's Section 1983 claim of deliberate indifference, Plaintiff must file such a Section 1983 action within the prescribed time period. Because there is no federally prescribed statute of limitation, Courts look to and apply their respective State's statutes of limitation. See Owens v. Okure, 488 U.S. 235, 249-50, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). The Fourth Circuit has recognized that "in the absence of any state statute of limitations specifically applicable to suits to redress a violation of civil rights, the West Virginia limitation on personal injury actions applies." McCausland v. Mason County Bd. of Ed., 649 F.2d 278 (4th Cir. 1981), cert. denied, 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981). Under West Virginia law, the applicable period of limitation upon a plaintiff's right to file a personal injury is two-years from the time the cause of action accrued. See W.Va. Code § 55-2-12(b).[5]

Although the limitation period is borrowed from State law, the question of when a cause of action accrues is answered according to federal law. See Brooks v. City of Winston-Salem, NC, 85 F.3d 178, 181 (4th Cir. 1996). Under federal law, a cause of action accrues "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Nasim v. Warden, MD House of Corr., 64 F.3d 951, 955 (4th Cir. 1995)(en banc), cert. denied, 516 U.S. 1177, 116 S.Ct. 1273, 134 L.Ed.2d 219 (1996)(citing United States v. Kubrick, 444 U.S. 111, 122-24, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979)). "Accrual of a claim does not 'await

---

[5]  West Virginia Code § 55-2-12 provides as follows:

> Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.

awareness by the plaintiff that his injury was negligently inflicted.'" <u>Nasim</u>, 64 F.3d at 955

(quoting <u>Childers Oil Co., Inc. v. Exxon Corp.</u>, 960 F.2d 1265, 1272 (4th Cir. 1992)). Accordingly,

for a Section 1983 action, "a cause of action accrues either when the plaintiff has knowledge of

his claim or when he is put on notice -- e.g., by the knowledge of the fact of injury and who caused

it -- to make reasonable inquiry and that inquiry would reveal the existence of a colorable claim."

<u>Nasim</u>, 64 F.3d at 955. To determine when a plaintiff possessed knowledge of his injury, the Court

"may look to the common-law cause of action most closely analogous to the constitutional right

at stake as an 'appropriate starting point.'" <u>Brooks</u>, 85 F.3d at 181 (citations omitted).

Furthermore, courts look to State law to determine whether the statute of limitations is

tolled with respect to Plaintiff's Section 1983 claim and state law claims. <u>Wallace v. Kato</u>, 549

U.S. 384, 394 (2007)("We have generally referred to state law for tolling rules, just as we have for

the length of the statute of limitations."); <u>Rakes v. Rush</u>, 2009 WL 2392097, * 5 (S.D.W.Va. Aug.

4, 2009)(J. Copenhaver)(<u>citing</u> <u>Board of Regents v. Tomanio</u>, 446 U.S. 478, 100 S.Ct. 1790, 64

L.Ed.2d 440 (1980)). West Virginia recognizes the discovery rule, which tolls the statute of

limitations until a claimant knows or by reasonable diligence should know his claim. <u>See</u> <u>Gaither</u>

<u>v. City Hospital, Inc.</u>, 199 W.Va. 706, 487 S.E.2d 901 (1997); <u>also see</u> <u>Dunn v. Rockwell</u>, 225

W.Va. 43, 53, 689 S.E.2d 255, 265 (2009). The West Virginia Supreme Court discussed the proper

application of the discovery rule as follows:

> [T]he statute of limitations begins to run when the plaintiff knows, or by the
> exercise of reasonable diligence, should know (1) that the plaintiff has been injured,
> (2) the identity of the entity who owed the plaintiff a duty to act with due care, and
> who may have engaged in conduct that breach that duty, and (3) that the conduct of
> that entity has a causal relation to the injury.

<u>Dunn v. Rockwell</u>, 225 W.Va. 43, 52-53, 689 S.Ed.2d 255, 264-65(2009)(quoting <u>Gaither v. City</u>

<u>Hospital, Inc.</u>, 199 W.Va. 706, 487 S.E.2d 901 (1997)). Typically, a "plaintiff will 'discover' the

existence of a cause of action, and the statute of limitations will begin to run, at the same time that the actionable conduct occurs." Id., 225 W.Va. at 53, 689 S.Ed.2d at 265. A plaintiff is "charged with knowledge of the factual, rather than the legal, basis for the action." Id. The issue of "whether a plaintiff 'knows of' or 'discovered' a cause of action is an objective test" focusing on "whether a reasonable prudent person would have known, or by the exercise of reasonable diligence should have known, the elements of a possible cause of action." Id. Generally, a determination concerning the application of the discovery rule requires "resolution of factual questions by the trier of fact. Id. Finally, the Fourth Circuit recently recognized that the statute of limitations can be tolled "during the grievance process" because the exhaustion requirement of Section 1997e(a) posed "an extraordinary circumstances [that] stood in the way of filing suit." Battle v. Ledford, 912 F.3d 708, 720 (4th Cir. 2019). A prisoner must show "(1) that he ha[d] been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Fauconier v. Clarke, 966 F.3d 265, 275 (4th Cir. 2020)(quoting Battle, 912 F.3d at 718).

The undersigned first considers whether Plaintiff's Complaint is timely filed based upon the prison mailbox rule. Under the prison mailbox rule, "a pro se litigant's *legal papers* are considered filed upon 'delivery to prison authorities, not receipt by the clerk'." United States v. McNeill, 523 Fed.Appx. 979, 981 (4th Cir. 2013)(citing Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988))(emphasis added). Relying on non-binding precedent, Defendants argue that the prison mailbox rule only applies to the filing of appeals. (Document No. 24.) In Lewis v. Richmond City Police Dept., 947 F.2d 733 (4th Cir. 1991), the Fourth Circuit specifically rejected the argument that the prison mailbox rule was limited to appeals. Lewis v. Richmond City Police Dept., 947 F.2d 733, 735-36 (4th Cir. 1991). In Lewis, the Fourth Circuit determined that a Section 1983 civil complaint was "filed" within the meaning of Federal Rules of Civil Procedure

pertaining to the commencement of an action and the filing of pleadings when a prisoner delivered the complaint to prison authorities for mailing to the clerk of the district court – not when the clerk of the of district court received the complaint. Id.; also see Cohen v. Rosenstein, 804 Fed.Appx. 194, * 195 (4th Cir. 2020)(applying the prison mailbox rule to the filing of plaintiff's amended complaint in federal court); Wagner v. Barnette, 2014 WL 695388, * 3 (W.D.Va. Feb. 24, 2014)(applying the prison mailbox rule to the filing of Plaintiff's Biven's Complaint). Generally, it is presumed that a piece of mail will be received by the addressee within a reasonable time after mailing, "equivalent to that normally required for a letter to pass through the mail." Katz v. Odin, Feldman & Pittleman, P.C., 332 F.Supp.2d 909, 916-17 (E.D. Va. 2004)(noting a presumption that a notice of judgment will be received within a reasonable time of between three and seven days after mailing). "When a court does not receive a pleading within a reasonable time after the date upon which an inmate claims to have mailed it, it is appropriate to require independent proof of the mailing date, such as mail logs, prison trust fund records, or receipt for postage, before giving the inmate the benefit of the prison mailbox rule." Roberts v. McKenzie, 2014 WL 11460889, * 1 (D.Md. Aug. 18, 2014)(citing Smallwood v. Young, 425 F.Supp.2d 717, 727 (E.D. Va. 2006)).

In the instant case, Plaintiff's verified Complaint is dated November 10, 2022. (Document No. 2, p. 7.) Plaintiff's Complaint was accompanied by a notarized letter to the Clerk wherein Plaintiff indicates he was depositing his Complaint in the prison mailing system on November 10, 2022. (Document No. 2-2.) The Complaint was received and filed by the Clerk on November 17, 2022. (Document No. 2.) Thus, the Complaint was received within a reasonable time (7 days) after the date upon which the Plaintiff claims to have mailed it. The undersigned, therefore, finds that Plaintiff's Complaint was timely filed on November 10, 2022, based upon the prison mailbox rule. The undersigned finds it unnecessary to consider Plaintiff's remaining arguments for tolling of the

limitations period. Accordingly, it is respectfully recommended that Defendant's Motion to Dismiss be denied as to the untimeliness argument.

### C.    Deliberate Indifference Allegations:

In their Motion to Dismiss, Defendants argue that "Plaintiff's allegations against these Defendants are threadbare recitals of the elements of a cause of action supported by conclusory allegations that are not entitled to the presumption of truth." (Document Nos. 13 and 14.) Defendants note that Plaintiff merely asserts that Defendants "[k]nowingly and willing placed my life along with all inmates' lives at risk by not following policies and procedures." (Document No. 14, p. 4.) Defendants contend that deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness…." (Id.) Defendants assert that "[t]he Plaintiff has failed to assert any facts in the Complaint to support the notion that the Defendants were aware of any facts to put them on notice that the Plaintiff was at a particular excessive risk of harm and that they had drawn such inference from these facts." (Id., p. 5.) Defendants conclude that "Plaintiff has merely asserted a threadbare recital of some elements of such a claim along with conclusory statements support them." (Id.) Accordingly, Defendants argue that Plaintiff's Complaint must be dismissed. (Id.)

In Response, Plaintiff requests permission to amend his Complaint. (Document No. 22, p. 7.) Plaintiff explains that Defendants Ames, Frame and Ward "are the brain of the body, they are to make sure that their counterparts are working correctly and in their correct places." (Id., p. 4.) Plaintiff states that "officers are rarely present on the yard, a common practice at Mt. Olive Corr. Complex, [which] makes the yard a very high risk to the inmates' lives." (Id.) Plaintiff asserts that Defendants Jane Doe, John Doe, and Unknowns[6] "were nowhere to be seen on the yard on

---

[6] Plaintiff states that he has identified two the unknown defendants as Sargent Matthew Isaacs and

November 11, 2020, as every other night." (Id.) Plaintiff indicates that all Defendants knew of the substantial risk to Plaintiff safety. (Id., pp. 5 – 6.) Plaintiff indicates that despite this knowledge, Defendants Ames, Frame, and Ward failed to ensure that correctional officers were present in the yard area and Defendants Jane Doe, John Doe, and Unknowns failed to be present in the yard to protect Plaintiff from attack. (Id.) Plaintiff, therefore, argues that Defendants' Motion to Dismiss should be denied and Plaintiff should be granted permission to amend his Complaint. (Id., p. 7.) Although Defendants filed a Reply, Defendants did not address the foregoing issue. (Document No. 24.)

The undersigned views Plaintiff's Complaint as setting forth a claim under the Eighth Amendment. As stated above, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety" under the Eighth Amendment. Wolfish, supra, 573 F.2d at 125. Thus, sentenced prisoners are entitled to reasonable protection from harm at the hands of fellow inmates and prison officials under the Eighth Amendment. See Farmer, 511 U.S. at 832-34, 114 S.Ct. at 1976-77; Trop v. Dulles, 356 U.S. 86, 102, 78 S.Ct. 590, 598-99, 2 L.Ed.2d 630 (1958); Woodhous v. Commonwealth of Virginia, 487 F.2d 889, 890 (4th Cir. 1973). Inmates' claims that prison officials disregarded specific known risks to their health or safety are analyzed under the deliberate indifference standard of the Eighth Amendment. See Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987); Moore v. Winebrenner, 927 F.2d 1312, 1316 (4th Cir. 1991), cert. denied, 502 U.S. 828, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991)(Stating that supervisory liability may be imposed where prison supervisors "obdurately," "wantonly," or "with deliberate indifference" fail to address a known pervasive risk of harm to an inmate's health or safety). To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an

Corporal Dennis Cutlip. (Document No. 22, p. 7.)

inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991); also see King v. Rubenstein, 825 F.3d 206, 218 (4th Cir. 2016)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993))("[T]o make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'"); Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008)(explaining that the above requirements "spring from the text of the amendment itself; absent intentionality, a condition imposed upon an inmate cannot properly be called 'punishment,' and absent severity, a punishment cannot be called 'cruel and unusual.'") To satisfy the objective component, Plaintiff must show that the challenged condition caused or constituted an extreme deprivation. De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003). To demonstrate an "extreme deprivation," a plaintiff "must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from [his] exposure to the challenged conditions." Odom v. South Caroline Dept. of Corrections, 349 F.3d 765, 770 (4th Cir. 2003); also see Wilson v. Seiter, 501 U.S. at 298, 111 S.Ct. at 2321(A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities."); Helling v. McKinney, 509 U.S. 25, 33-34, 113 S.Ct. 2475, 2480-82, 125 L.Ed.2d 22 (1993))(noting that an inmate need not show the he suffered serious harm to prevail on this objective prong because the "Eighth Amendment protects against future harm" and a "remedy for unsafe conditions need not await a tragic event"). To satisfy the subjective component, Plaintiff must demonstrate a "deliberate indifference" to his health and

safety by defendants. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, supra, 511 U.S. at 837, 114 S.Ct. at 1979. The Fourth Circuit has acknowledged that the "actual knowledge standard required to find prison officials deliberately indifferent to a substantial risk of serious injury may be proven by circumstantial evidence." Makdessi v. Fields, 789 F.3d 126, 137-38 (4th Cir. 2015)(stating that "even under the subjective standard, a prison official cannot hide behind an excuse that he was unaware of a risk, no matter how obvious"); also see Porter v. Clarkes, 923 F.3d 348, 361 (4th Cir. 2019)("an obvious risk of harm justifies an inference that a prison official subjectively disregarded a substantial risk of serious harm to the inmate"). A prison official's subjective actual knowledge can be proven through circumstantial evidence, for example, that the "substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it." Farmer, supra, 511 U.S. at 842, 114 S.Ct. at 1984. "[C]ourts have found that 'a corrections officer's failure to intervene in a beating can be the basis of [§ 1983] liability" if the officer had a reasonable opportunity to act and "simply refused to do so.'" Raynor v. Pugh, 817 F.3d 123 (4th Cir. 2016)(citing Smith v. Mensinger, 293 F.3d 641, 650 (3d. Cir. 2002)); also see Odom v. S.C. Dep't of Corr., 349 F.3d 765, 773 (4th Cir. 2003)("[A] correctional officer who stands by as a passive observer and takes no action whatsoever to intervene during an assault violates the [Eighth Amendment] rights of the victim inmate.") It is insufficient for Plaintiff to make collective allegations against all defendants without identify how each individual defendant personally interacted with Plaintiff or was responsible for the

deprivation of his Eighth Amendment rights. Langford v. Joyner, 62 F.4th 122, 124-25 (4th Cir. 2023). Plaintiff in this case must therefore allege and establish that *each* Defendant was aware of the excessive risk to Plaintiff's health or safety and *each* Defendant disregarded that risk.

As to Defendants Ames, Frame, and Ward, Plaintiff appears to assert supervisory liability. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. * * * Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the officials own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676, 129 S.Ct. 1936, 1948, 173 L.Ed.2d 868 (2009); see also Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001), cert. denied, 537 U.S. 1045 , 123 S.Ct. 621, 154 L.Ed.2d 517 (2002)("In a Bivens suit there is no *respondeat superior* liability. * * * Instead, liability is personal, based upon each defendant's own constitutional violations." (Citation omitted.)); Monell, supra, 436 U.S. at 694, 98 S.Ct. at 2018("the mere right to control without any control or direction having been exercised and without any failure to supervise is not enough to support § 1983 liability"). Liability can be premised, however, "on a recognition that supervisory indifference or 'tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984), cert. denied, 470 U.S. 1035, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985). To establish liability under Section 1983 for a supervisory defendant, the plaintiff must establish the following:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). Thus, a plaintiff must show "a pervasive and unreasonable risk of harm from some specified source and that the supervisor's corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive [practices].'" Slakan, 737 F.2d at 373. Evidence of a supervisor's continued inaction in the face of documented widespread abuses provides an independent basis for finding he or she either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his or her subordinates. Id. A supervisor's mere knowledge of a subordinate's unconstitutional conduct is not enough. Rather, Section 1983 liability may be imposed upon a supervisor only on the basis of purposeful "violations of his or her supervisory responsibilities." Ashcroft, 556 U.S. at 676, 129 S.Ct. at 1949.

> In the context of a failure to protect claim premised on supervisory liability, Plaintiff "assumes a heavy burden of proof," as he "not only must demonstrate that the prisoners face a pervasive and unreasonable risk of harm from some specified source, but he must show that the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practices." S*lakan*, 737 F.2d at 373. Generally, a plaintiff cannot satisfy this heavy burden of proof "by pointing to a single incident or isolated incidents." *Id*. But, "[a] supervisor's continued inaction in the face of documented widespread abuses ... provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates." *Id*. (citations omitted).

Toomer v. Baltimore City Det. Ctr., No. 12-cv-0083, 2014 WL 4678712, at *5 (D. Md. Sept. 18, 2014). Thus, the inquiry for the Court is whether the defendant individually "acted wantonly, obdurately, or with deliberate indifference to the pervasive risk of harm." Moore v. Winebrenner, 927 F.2d 1312, 1315 (4th Cir. 1991).

When a *pro se* Complaint can be remedied by an amendment, the District Court may not dismiss the Complaint with prejudice but must permit the amendment. Denton, 504 U.S. at 34, 112 S.Ct. at 1728; also see Goode, 807 F.3d at 619. The undersigned finds that viewing Plaintiff's Complaint liberally, and considering the additional facts contained in his Response, Plaintiff has

24

made ample allegations of unconstitutional conduct. The undersigned concludes that Plaintiff's Complaint can be remedied by allowing Plaintiff an opportunity to amend his allegations to state additional facts in support of his claim. The undersigned respectfully recommends that Defendants' Motion be denied to the extent Defendants allege that Plaintiff fails to allege a plausible claim. The undersigned further recommends that Plaintiff be allowed to amend his Complaint to include additional specific factual allegations about each defendant's actions or omissions, and allege, with some degree of particularity, how each named defendant was involved in the alleged deprivation of his rights.

## **PROPOSAL AND RECOMMENDATION**

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DENY** Defendants' Motion to Dismiss (Document No. 13); **GRANT** Plaintiff permission to amend his Complaint to include the additional facts to support his Eighth Amendment claim; and **REFER** the matter back to the undersigned for further proceedings.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo*

review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.

Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: October 4, 2023.

Omar J. Aboulhosn
United States Magistrate Judge