**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

CHARLES MICHAEL WENTZ,

                Plaintiff,

v.                                    CIVIL ACTION NO.   2:22-cv-00528

SUPERINTENDENT DONALD AMES, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

On November 17, 2022, the Plaintiff, acting *pro* se, filed a *Complaint* (Document 2), wherein he alleged that the Defendants violated his Eighth Amendment rights by subjecting him to unconstitutional conditions of confinement.   By *Administrative Order* (Document 4) entered on November 18, 2022, this action was referred to the Honorable Omar J. Aboulhosn, United States Magistrate Judge, for total pretrial management and submission to this Court of proposed findings of fact and recommendation for disposition, pursuant to 28 U.S.C. § 636.   On October 4, 2023, Judge Aboulhosn submitted a *Proposed Findings and Recommendation* (PF&R) (Document 32) recommending that the *Motion to Dismiss by Defendants Ames, Frame and Ward* (Document 13) be denied, and that this matter be referred to him for further proceedings.   The Defendants timely filed their *Objections to Proposed Findings and Recommendations* (Document 33).   For the reasons stated herein, the Court finds that the objections should be overruled, and the PF&R should be adopted.

## FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

Magistrate Judge Aboulhosn's PF&R sets forth in detail the procedural and factual history surrounding the Plaintiff's petition and the resulting proceedings.   The Court incorporates by reference those facts and procedural history and provides the following summary for context.   The Plaintiff, Charles Wentz, was an inmate at Mount Olive Correctional Complex during the events underlying this matter.[1]   In his *Complaint*, he alleges that on November 11, 2020, he was "assaulted and nearly killed" as a result of the Defendants' failure to follow "laws, policies, and procedures by not having guards posted at all times on the yard."   (Document 2.)   Specifically, he claims that two inmates "stomped up and down on [his] head and face" to the extent that he had to be "life flighted" to CAMC Hospital where he underwent a 15-hour surgery and was placed on a ventilator for several days.   (*Id.*)   He further indicated that at the time of filing, he was still undergoing surgeries, including one to reconstruct his eyelid.   (*Id.*)

The Defendants moved to dismiss on March 6, 2023.   (Document 13.)   On March 29, 2023, the Plaintiff filed his *Response in Opposition to Motion to Dismiss* (Document 22).   The Defendants replied on April 5, 2023.   (Document 24.)   The Plaintiff filed a *Surreply* (Document 26) on April 17, 2023.   As previously stated, Judge Aboulhosn submitted a PF&R on October 4, 2023.

## STANDARD OF REVIEW

This Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."   28 U.S.C. § 636(b)(1)(C). However, the Court is not required to review, under a de novo or any other standard, the factual or

---

[1]  Mr. Wentz is currently housed at Northern Correctional Facility "for protection."   (Compl. at 3) (Document 2.)

legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed.  *Thomas v. Arn*, 474 U.S. 140, 150 (1985).  In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations."  *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).  When reviewing portions of the PF&R de novo, the Court will consider the fact that Plaintiff is acting *pro se*, and his pleadings will be accorded liberal construction.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978).

## DISCUSSION

The Defendants sought dismissal on the grounds that Mr. Wentz's claims were barred by the statute of limitations, he failed to state a claim for which relief could be granted, and he failed to exhaust his administrative remedies prior to initiating this action.  (*See* Mem. Supp. Mot. Dismiss at 3–7) (Document 14.)   Magistrate Judge Aboulhosn recommended that the motion to dismiss be denied.   He found that the Defendants have not met their burden of showing that Mr. Wentz failed to exhaust his available administrative remedies.   Judge Aboulhosn further determined that Mr. Wentz's claims were timely filed based on application of the prison mailbox rule, and that any factual deficiencies in the complaint could be remedied by amendment.

The Defendants object to the PF&R on two grounds.   First, they contend the Magistrate Judge erred in finding that the administrative grievance process was "unavailable" to the Plaintiff under the circumstances.   They note that the Plaintiff was transferred from CAMC to MOCC five days after the incident, "well within the 15-day period to file a grievance."   (Objs. at 2) (Document 33.)   Therefore, they argue that the Plaintiff's failure to timely file a grievance does not render the

grievance process unavailable to him.   Second, the Defendants argue that the Magistrate Judge erred in finding that the Plaintiff timely filed his Complaint within the applicable two-year statute of limitations period.   Specifically, they contend Judge Aboulhosn relied upon binding Fourth Circuit precedent that improperly extends the "prison mailbox rule" to the filing of a pro se prisoner's complaint.[2]   Should these objections be overruled, the Defendants acknowledge that "it would be prudent to allow Plaintiff to amend his complaint regarding his allegations of deliberate indifference."   (*Id.* at 4.)

A.      *Availability and Exhaustion of Remedies*

The Court finds that the PF&R accurately summarized the facts and law, and the Defendants' objections are without merit.   The Defendants contend Judge Aboulhosn erred in finding that the Plaintiff exhausted his available administrative remedies because the Plaintiff "surrendered his grievance process" by failing to file his grievance within the prescribed fifteen-day period following the incident at MOCC.   (Objs. at 1.)   They argue that "the failure to timely file a grievance does not render the Plaintiff's grievance process 'unavailable.'"   (*Id.* at 2.)   They acknowledge the Plaintiff's argument that he was unable to timely file a grievance due to his extensive injuries and hospitalization.   However, they note that Mr. Wentz was transferred from the hospital back to MOCC five days after the incident.   Thus, they maintain that he "had the opportunity to file his grievance in a timely fashion but did not do so," and therefore "[t]here is no showing that his administrative remedies were unavailable."   (*Id.*)

---

2  As Judge Aboulhosn noted in his PF&R, the Defendants relied on nonbinding case law to the contrary in their initial motion and memorandum, as discussed in more detail below.   Counsel's failure to provide the Court with binding precedent in support of Defendants' position and continued arguments against longstanding established law in this circuit suggests a pattern of either failing to conduct thorough legal research or willful misrepresentation of the status of the applicable law and risks violation of Counsel's ethical duty of candor with the Court. Defense counsel would be well advised to save such arguments for the Fourth Circuit.

The Prison Litigation Reform Act provides that "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has found that "mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion" to excuse a failure to exhaust. *Ross v. Blake*, 578 U.S. 632, 639 (2016). However, relevant here, "the PLRA contains its own, textual exception to mandatory exhaustion," namely that "the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies." *Id.* at 642. "Accordingly, an inmate is required to exhaust those, but only those grievance procedures, that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007); *see Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Nevertheless, "failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). Here, the Defendants have the burden of proving that Mr. Wentz had available remedies which he failed to exhaust.

The Court finds that the failure to exhaust is not clear from the face of Mr. Wentz's complaint. Specifically, it is unclear whether the grievance process was available to him. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). West Virginia Division of Corrections Policy Directive 335.00 sets forth the administrative remedy process for MOCC. It provides that an inmate must first file a grievance

utilizing a grievance form "within fifteen (15) of any occurrence that would cause him/her to file a grievance."  W. Va. Code R. § 90-9-4.1.  The Defendants assert that Mr. Wentz was not prevented from availing himself of MOCC's grievance process because he was transferred from CAMC to MOCC five days after the incident and his hospitalization, well within the prescribed 15-day filing period.  Mr. Wentz maintains that the nature and extent of his medical condition hindered his ability to file a grievance within that time.   His verified complaint states that he was delayed in filing administrative remedies due to his "long hospital stay" and "ongoing surger[ies]," and the medical records attached thereto appear to support his claim that his injuries were severe. (Compl. at 3; Compl. at Ex. 1) (Documents 2, 2-1.)  He continues to assert, in response to the Defendants, that the "medical record [and] prison record will all show 'massive injuries,' [he] went from a ventilator to a prison hospital, in and out of surgeries, some real trauma, transferred to here (Northern Correctional Facility) for life safety."  (Pl.'s Resp. at 2–3) (Document 22.)   Thus, he argues that he exhausted his administrative remedies once the remedies were available to him, i.e., once his medical condition subsided enough to file his grievance.  (*See id.* at 3.)   As Judge Aboulhosn noted, the Defendants failed to address the foregoing in their Reply.   (Document 26.)

While these facts may present a matter of first impression, the Fourth Circuit has found that it is error to dismiss a complaint where "the record leaves too much to speculation" to find that an inmate's failure to exhaust administrative remedies "should be excused because those remedies were not, in truth, 'available' to him."  *Griffin v. Bryant*, 56 F.4th 328, 338 (4th Cir. 2022) (finding at the summary judgment stage that "the facts as they are known do not justify an award of judgment as a matter of law. On remand, appropriate discovery and development of the record . . . will assist the court in resolving this litigation.").   Here, where Mr. Wentz has presented

6

facts indicating that his medical condition prevented him from timely filing his grievance and considering that "any such issue of fact must be resolved in [his] favor at this stage," the Court finds that dismissal for failure to exhaust is premature.   *Neale v. Hogan*, No. 21-7287, 2022 WL 12325186, at *2 (4th Cir. Oct. 21, 2022) (citing *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (court resolving exhaustion issue at dismissal stage must "look[ ] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, take[ ] the plaintiff's version of the facts as true")).   Indeed, as Judge Aboulhosn noted, there remain issues of fact that require further development and the Defendants have not provided evidence indicating that administrative remedies remained available to Mr. Wentz despite his medical condition.  *See Smith v. Andrews*, 75 F.4th 805, 809 (8th Cir. 2023) (finding, in light of *Ross*, that "[i]t follows that administrative remedies are 'unavailable' to an inmate under the PLRA when (1) the inmate was unable to file a timely grievance due to physical or mental incapacity; and (2) the administrative system's rules do not accommodate the condition by allowing a late filing."); *Rucker v. Giffen*, 997 F.3d 88, 94 (2d Cir. 2021) (finding that "grievance procedures were 'incapable of use'" where plaintiff was hospitalized "for over a month," but "any failure to file a grievance within five days ... would render it untimely" (quoting *Ross*, 578 U.S. at 643)); *see also Smallwood v. Williams*, 59 F.4th 306, 314 (7th Cir. 2023) (noting that administrative remedies may be unavailable "to an inmate incapacitated by a stroke").

Accordingly, the Court finds no error in Judge Aboulhosn's conclusion that the Defendants have not met their burden of proving that administrative remedies were available to Mr. Wentz, and the Defendants' objection to the same should be overruled.

B.      Statute of Limitations

The Court further finds that the Defendants' objection regarding the Magistrate Judge's application of the "prison mailbox rule" to the filing of *pro se* inmate complaints is without merit. The Defendants first argue that Judge Aboulhosn's reliance on the Fourth Circuit's decisions in *United States v. McNeil* and *Houston v. Lack* improperly "broadens the mailbox rule" because those cases dealt with inmate appeals.   (*See* Objs. at 3.)   They next contend Judge Aboulhosn erred in relying on the Fourth Circuit's decision in *Lewis v. Richmond City Police Department*, which specifically applied the prison mailbox rule to the filing of *pro se* inmate complaints, because "*Lewis* relies on cases which dealt with appeals and therefore improperly extends the mailbox rule to the filing of civil actions contrary to established law and the Federal Rules of Civil Procedure."   (*Id.* at 4.)   The Defendants do not elaborate further as to what "established law" they rely upon beyond pointing to the absence of a mailbox rule in the Federal Rules of Civil Procedure.

In *Lewis v. Richmond City Police Dep't*, 947 F.2d 733 (4th Cir. 1991), the Fourth Circuit specifically extended the Supreme Court's ruling in *Houston v. Lack*, 487 U.S. 266 (1988), to the filing of *pro se* inmate complaints.   In doing so, the court held that an incarcerated *pro se* litigant's complaint is "filed" within the meaning of the Federal Rules of Civil Procedure "when the prisoner deliver[s] the complaint to prison authorities for mailing to the clerk of the district court."   *Lewis*, 947 F.2d at 734.   *Lewis* is binding precedent in this circuit.   The Defendants argue that *Lewis* "relies on cases which dealt with appeals and therefore improperly extends the mailbox rule . . . contrary to established law and the Federal Rules of Civil Procedure."   (Defs.' Obj. at 4.)   The Court notes that the Fourth Circuit in *Lewis* necessarily referred to the *Houston* case to provide its reasoning as to why the Supreme Court's holding should be extended to the civil context.

8

Significantly, *Lewis* refers to only two other cases, which are cited to support the court's determination that "*Houston* itself gives no indication that it should be limited to habeas corpus appeals" because *Houston* was a civil matter "and other circuits have extended the filing rule in civil contexts."   *Lewis*, 947 F.2d at 736 (citing *Hostler v. Groves*, 912 F.2d 1158, 1160 (9th Cir. 1990) (applying the filing rule to non-habeas civil appeals), *cert. denied,* 498 U.S. 1120 (1991); *Smith v. Evans*, 853 F.2d 155, 161 (3d Cir. 1988) (considering *Houston* regarding a Fed. R. Civ. P. 59(e) motion to alter or amend a district court judgment)).   It is of no consequence that the court's reasoning looked to existing case law which, at the time, had yet to apply the rule beyond the appellate context.   In light of the three-plus decades of precedent within the Fourth Circuit and our sister circuits holding the same, the Defendants' argument that *Lewis* improperly extended the rule is frivolous at worst, and at best is more appropriately reserved for the Court of Appeals. *See Doe v. Chao*, 511 F.3d 461, 465 (4th Cir. 2007) ("It is axiomatic that in our judicial hierarchy, the decisions of the circuit courts of appeals bind the district courts just as decisions of the Supreme Court bind the circuit courts."); *Doe v. Charleston Area Med. Ctr., Inc.*, 529 F.2d 638, 642 (4th Cir. 1975) ("Such a decision is binding, not only upon the district court, but also upon another panel of this court—unless and until it is reconsidered en banc.").   Accordingly, the Court finds no error in Judge Aboulhosn's application of the prison mailbox rule to the filing of Mr. Wentz's *pro se Complaint*, and the Defendants' objection to the same should be overruled.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Defendants' Objections to Proposed Findings and Recommendations* (Document 33) be **OVERRULED**, that the *Proposed Findings and Recommendation* (Document 32) be **ADOPTED**,

9

that the *Motion to Dismiss by Defendants Ames, Frame and Ward* (Document 13) be **DENIED**, and that the Plaintiff be **GRANTED** leave to amend his Complaint to add facts in support of his Eighth Amendment claim.   Further, the Court **ORDERS** that the matter be **REFERRED** to the Magistrate Judge for further proceedings.

The Court **DIRECTS** the Clerk to send a copy of this Order to Magistrate Judge Aboulhosn, to counsel of record, and to any unrepresented party.

ENTER:      March 6, 2024

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

10